**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| RANALDO MILES,<br>DONNELL BROOKS, SR., and<br>PARIS DUNMARS,<br><br>          Plaintiffs,<br><br>v.<br><br>FRITO-LAY, INC.,<br><br>          Defendant. | Case No. 21-2098 |

## **COMPLAINT**

The plaintiffs, Ranaldo Miles, Donnell Brooks, Sr., and Paris Dunmars, state and allege the following claims for relief against the defendant, Frito-Lay, Inc.

## **JURISDICTION AND VENUE**

1.     This is an employment case based upon and arising under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq. (Title VII).

2.     This court has subject matter jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. § 1331.  In addition, Mr. Miles' claims under Title VII were included in a timely administrative charge filed with the Equal Employment Opportunity Commission ("EEOC").  The EEOC issued a right-to-sue letter to Mr. Miles regarding these claims, and this action was filed within 90 days after receipt of the right-to-sue letter.

3.      All of the wrongful acts and practices alleged below were committed within the State of Kansas, and venue is proper in this court pursuant to 28 U.S.C. § 1391(b)-(c).

## PARTIES

4.      The plaintiff, Ranaldo Miles, is African American, and he resides in Topeka, Kansas.  Mr. Miles has been employed by the corporate defendant, Frito-Lay, Inc., for over one year and nine months and he is still currently employed.

5.      The plaintiff, Donnell Brooks, Sr., is African American, and he resides in Cockeysville, Maryland.  Mr. Brooks was formerly employed by the corporate defendant, Frito-Lay, Inc., for over eight years.

6.      The plaintiff, Paris Dunmars, is African American, and he resides in Topeka, Kansas.   Mr. Dunmars was formerly employed by the corporate defendant, Frito-Lay, Inc., for about four months.

7.      The corporate defendant, Frito-Lay, Inc., is a corporation with its principal place of business in Plano, Texas.  Frito-Lay owns and operates a food manufacturing plant in Topeka, Kansas ("the Topeka plant").

## FACTUAL ALLEGATIONS

8.      Mr. Brooks, during most of his employment with Frito-Lay, worked in the warehouse in the Topeka plant. While working in the warehouse, Mr. Brooks was typically assigned the most physically demanding tasks, particularly working on the "pick belt."

9.     During most of his employment with Frito-Lay, Mr. Brooks was subjected to a racially hostile, intimidating, and offensive work environment. For example, on January 15, 2018, which was Martin Luther King Day, a hangman's noose was found by African American employees in the warehouse. The hangman's noose was immediately brought to the attention of the Topeka plant's management Team and Human Resources Department.

10.     However, the Topeka plant's management team and Human Resources Department failed to take reasonable remedial action to address the hangman's noose incident. For example, they failed to investigate allegations that the hangman's noose was brought to the warehouse by a white employee who, the week before, had been involved in a fight with an African American employee. They further falsely informed the African American employees that the hangman's noose could have been left by an outside contractor. African American employees throughout the warehouse, including Mr. Brooks, perceived the presence of the hangman's noose, as well as the failure of the management team and the Human Resources Department to take reasonable remedial action, as creating a racially hostile work environment.

11.     During most of his employment with Frito-Lay, Mr. Brooks was not given the same training as similarly situated white employees. As a consequence, Mr. Brooks continued to be assigned the most physically demanding tasks.

12.     In April of 2019, Mr. Dunmars applied for a full-time position as a machine operator in the Topeka plant. On April 17, 2019, Mr. Dunmars received

an email from Frito-Lay, stating that he met the qualifications for the machine operator position, and that his application would be passed to the hiring manager.

13.    However, on April 18, 2019, Mr. Dunmars received another email from Frito-Lay, offering to hire him to "the temporary position of Warehouse person." This temporary position paid much less than the machine operator position which he was qualified for. Mr. Dunmars reluctantly accepted the position of Warehouse Person in order to gain some employment with Frito-Lay.

14.    On May 7, 2019, Mr. Miles started his employment with Frito-Lay in the Topeka plant. Like Mr. Dunmars, Mr. Miles was hired to the temporary position of Warehouse Person.

15.    During the summer of 2019, Mr. Brooks, Mr. Dunmars, and Mr. Miles were all working in the warehouse in the Topeka plant, and they were all discriminated against because of their race. This discrimination included the following: inadequate training; typical assignment of the most physically demanding and unpleasant tasks; close monitoring and frequent verbal warnings by supervisors; denial of employment opportunities; and excessive overtime.

16.    Also, during the summer of 2019, Mr. Brooks, Mr. Dunmars, and Mr. Miles were all subjected to a racially hostile work environment. This racially hostile work environment included the following: racially offensive graffiti on the walls in the Topeka plant, such as swastikas and "assassinate Obama"; racially offensive comments by employees and supervisors; and disrespectful comments and conduct by supervisors.

17.    Also, during the summer of 2019, Mr. Brooks applied to transfer to another Frito-Lay plant in Maryland. However, his transfer to the plant in Maryland was blocked or impeded by the Human Resources Department in the Topeka plant.

18.    Also, during the summer of 2019, Mr. Dunmars likewise applied to transfer to two other Frito-Lay plants in Illinois. However, his transfers to another plant in Illinois were likewise blocked or impeded by the Human Resources Department in the Topeka plant.

19.    Also, during the summer of 2019, Mr. Brooks, Mr. Dunmars, and Mr. Miles all complained to the Human Resources Department in the Topeka plant that they were being subjected to racial discrimination and a racially hostile work environment. However, the Human Resources Department failed to take reasonable remedial action in response to these complaints. In addition, employees in the Human Resources Department, as well as certain supervisors, took various adverse actions against Mr. Brooks, Mr. Dunmars, and Mr. Miles in retaliation for lodging their complaints.

20.    On or about August 31, 2019, Mr. Dunmars resigned from his employment in the Topeka plant because of his low pay and his adverse working conditions.

21.    During the last part of 2019 and the first part of 2020, Mr. Brooks and Mr. Miles continued to be subjected to racial discrimination and a racially hostile work environment in the Topeka plant.

22.    On February 7, 2020, Mr. Miles filed an administrative charge of discrimination with the Kansas Human Rights Commission ("KHRC"), alleging racial discrimination and retaliation by Frito-Lay. Thereafter, Mr. Miles' supervisors took various adverse actions against him in retaliation for filing his administrative charge.

23.    In the spring of 2020, Mr. Brooks directly applied to another Frito-Lay plant in Maryland for employment. However, his application for employment was blocked or impeded by the Human Resources Department in the Topeka plant.

24.    In June of 2020, Mr. Dunmars applied for re-employment in the Topeka plant. On June 12, 2020, Mr. Dunmars received an email from Frito-Lay, stating that he met the qualifications for the position of Warehouse/Material Handler, and that his application would be passed to the hiring manager.

25.    However, on June 19, 2020, Mr. Dunmars received another email from Frito-Lay, stating that "[a]fter review of your application, we believe that there are more qualified applicants available for the position [of Warehouse/Material Handler]."

26.    On or about August 31, 2020, Mr. Brooks resigned from his employment in the Topeka plant. Mr. Brooks believed that he had no other reasonable choice but to resign because of the racial discrimination, racial harassment, and retaliation to which he had been subjected.

27.    Mr. Miles continues to be employed in the warehouse in the Topeka plant. Mr. Miles continues to be subjected to racial discrimination, racial

harassment, and retaliation, which include the following: inadequate training; typical assignment of the most physically demanding and unpleasant tasks; close monitoring and frequent verbal warnings by supervisors; denial of employment opportunities; and excessive overtime.

## COUNT I: HOSTILE WORK ENVIRONMENT

28.     The above paragraphs are incorporated herein by reference.

29.     As described above, Frito-Lay subjected all of the plaintiffs to a hostile, intimidating, and offensive work environment on the basis of their race.

30.     Frito-Lay's management team and Human Resources Department failed to take reasonable remedial action to address the racially hostile work environment to which the plaintiffs were subjected.  This racially hostile work environment violated 42 U.S.C. §1981.

31.     As a result of the racially hostile work environment to which the plaintiffs were subjected, the plaintiffs have each suffered damages in the form of loss of compensation, emotional distress, mental anguish, and loss of enjoyment of life.

32.     In subjecting the plaintiffs to a racially hostile work environment, Frito-Lay acted with malice or with reckless indifference to the plaintiffs' federally protected rights.  Consequently, Frito-Lay is liable for punitive damages.

Wherefore, the plaintiffs each pray for judgment against Frito-Lay for damages in excess of $100,000.00, consisting of loss of compensation, emotional

distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest, and litigation costs.

## COUNT II: RETALIATION

33.     The above paragraphs are incorporated herein by reference.

34.     The plaintiffs engaged in protected activities under Title VII and 42 U.S.C. §1981 by filing administrative charges with the KHRC and the EEOC, and/or by opposing what they in good faith believed to be racial discrimination.

35.     Frito-Lay retaliated against the plaintiffs for engaging in protected activities, in violation of Title VII and 42 U.S.C. §1981.  This retaliation included hindering the efforts of Mr. Brooks and Mr. Dunmars to transfer to a different Frito-Lay plant.  This retaliation also included assigning all of the plaintiffs the most physically demanding tasks.

36.     As a result of Frito-Lay's retaliatory conduct, the plaintiffs have each suffered damages in the form of loss of compensation, emotional distress, mental anguish, and loss of enjoyment of life.

37.     In retaliating against the plaintiffs, Frito-Lay acted with malice or with reckless indifference to the plaintiffs' federally protected rights.  Consequently, Frito-Lay is liable for punitive damages.

Wherefore, the plaintiffs each pray for judgment against Frito-Lay for damages in excess of $1000,000.00, consisting of loss of compensation, emotional distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest, and litigation costs.

## COUNT III: RACIAL DISCRIMINATION

38.     The above paragraphs are incorporated herein by reference.

39.     Frito-Lay discriminated against the plaintiffs because of their race by treating them less favorably than similarly situated white employees.  Frito-Lay's conduct violated both Title VII and 42 U.S.C. §1981.

40.     As a result of the racial discrimination by Frito-Lay, the plaintiffs have each suffered damages in the form of loss of compensation, emotional distress, mental anguish, and loss of enjoyment of life.

26.     In subjecting the plaintiffs to racial discrimination, Frito-Lay acted with malice or with reckless indifference to the plaintiffs' federally protected rights. Consequently, Frito-Lay is liable for punitive damages.

Wherefore, the plaintiffs each pray for judgment against Frito-Lay for their damages in excess of $100,000.00, consisting of loss of compensation, emotional distress, mental anguish, loss of enjoyment of life, and punitive damages, plus attorney fees, prejudgment interest, and litigation costs.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
      McENTIRE & JARBOE, L.L.C.

BY:    s/Alan V. Johnson
      Alan V. Johnson, KS #9992
      ajohnson@sloanlawfirm.com
      534 South Kansas Avenue, Suite 1000
      Topeka, Kansas 66603-3456
      785-357-6311
      Attorneys for Plaintiff

## REQUEST FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. Pro. 38, the plaintiffs request a trial by jury on all claims triable to a jury.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.
BY:___s/Alan V. Johnson_____
Alan V. Johnson, KS #9992
 ajohnson@sloanlawfirm.com
534 South Kansas Avenue, Suite 1000
Topeka, Kansas 66603-3456
785-357-6311
785-357-0152 facsimile
Attorneys for Plaintiff

## **DESIGNATION OF PLACE OF TRIAL**

The plaintiffs request that Kansas City, Kansas, be designated as the place of trial in the above-captioned matter.

Respectfully Submitted,

SLOAN, EISENBARTH, GLASSMAN
McENTIRE & JARBOE, L.L.C.

BY:   s/Alan V. Johnson
Alan V. Johnson, KS #9992
ajohnson@sloanlawfirm.com
534 South Kansas Avenue, Suite 1000
Topeka, Kansas 66603-3456
785-357-6311
785-357-0152 facsimile
Attorneys for Plaintiffs